UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CR-0084-CVE |
| | ) | |
| KORY DEWAYNE MCCORMICK, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This case arises out of an automobile search that occurred on December 24, 2019, in which an officer found and confiscated, among other things, multiple firearms from a vehicle in defendant Kory Dewayne McCormick's possession. On July 7, 2020, a grand jury indicted defendant for knowingly possessing firearms while knowingly being convicted of felonies and the misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(9), and 924(e)(1). Now before the Court is defendant's motion to suppress the evidence recovered from the vehicle (Dkt. # 17), on the ground that the officer's search was in violation of defendant's Fourth Amendment rights. Plaintiff filed a response in opposition (Dkt. # 19), arguing the search was valid under both the automobile exception and the consent exception to the Fourth Amendment warrant requirement. The Court held an evidentiary hearing on September 24, 2020.

**I.**

At the hearing, the prosecution called Officer Mandy Folden of the Drumright Police Department to testify to the events that occurred on December 24, 2019. On direct, the officer stated that she was working the night shift as the officer on patrol in the small town of Drumright that night. The officer testified that, at approximately 1:40 a.m., she observed a car pull into the gas

station at the Maveric Mini Mart and park on the south side of the pumps, closest to the mini mart. She observed defendant go inside the mini mart. She then observed some movement around the driver's side of the car. It appeared that someone was trying to get into the vehicle without a key. The officer stated she used binoculars to get a closer look but was unable to see exactly what was happening. She then observed the store attendant join defendant outside. The attendant stepped in between the two gas pumps and looked toward the officer's car. Officer Folden believed that this was an attempt to get her attention. At that point, the officer pulled into the mini mart parking lot and approached the driver.

When she approached defendant, he was under the hood of the car. She asked him what his name was and whether he was having a problem. He stated his name was Ryan Richardson and that he had locked his keys in the car. The officer testified she immediately suspected that was not his name, as that is her cousin's name. She also testified that she recognized defendant's voice from a previous encounter. The officer recalled that in the past she had been called to a burglary in progress because someone reported flashlights in their backyard. However, when she arrived on the scene the owner of the house, LaDonn McCormick, stated that the man who had been outside with flashlight was actually her nephew, Kory McCormick, and was allowed on the premises. Officer Folden did not see the defendant, Kory McCormick, during that encounter, as he would not come out of the house, but she testified she had seen defendant in booking photos before and knew he had a criminal history. The prosecution then asked whether the person the officer had interacted with on December 24, 2019, was in the room. The officer stated that he was and identified defendant.

The prosecution asked whether the officer had a chance to look through the windows of the vehicle on December 24, 2019. The officer confirmed she did, and that she observed that keys were

in fact locked in the car. She also observed the stock and part of the barrel of a rifle wrapped in a pair of green overalls on the passenger seat. After noticing the firearm, the officer again asked defendant his name, but received no answer. Instead, defendant said that he was going to walk across the street to his aunt's house to get a second set of keys. He proceeded to walk north, away from the mini mart.

  At that time, the officer went into the gas station to look at video surveillance footage. The footage showed defendant drive up, get out of the vehicle, enter the store, put his purchases on the counter, pay for them, and then go back to the car. The officer testified that the footage was not available for production due to a malfunction at the off-site video storage facility. However, there was a still-frame available because the officer had taken a picture of it. That photo was admitted as government's exhibit 1, after voir dire by defense counsel. (During the voir dire, defense counsel noted that there was a white vehicle at the gas pump, but the defendant's vehicle was red. The officer agreed and stated the red car was at the east pump, the first set of pumps. She stated that one wouldn't be able to see the gas pump from this view. Defense counsel further noted that footage was date-stamped December 28. The officer confirmed she saw that date.) Following voir dire, defense counsel objected to the exhibit on the grounds of relevance, stating the photo did not appear to be from the date in question. The Court admitted the photo over the objection.

  On further direct examination, Officer Folden stated defendant returned to the mini mart with his aunt, LaDonn McCormick, whom the officer knew from previous interactions. Defendant went back under the hood of the car, and the officer again asked his name. He stated it was Ryan Richardson. Next, the officer approached LaDonn McCormick, who remained in her white SUV nearby. Officer Folden told LaDonn McCormick that she couldn't understand defendant with his

3

head underneath the hood and asked her to confirm his name and birth date. LaDonn McCormick spelled out defendant's name, "K-O-R-Y," and gave the last name McCormick as well as defendant's birth date. Then LaDonn McCormick called her sister, Sharon McCormick, because the officer wanted permission from the owner to open the vehicle. During the phone call, the officer informed Sharon McCormick that defendant was at the mini mart, that he locked the keys in the vehicle, and that there was a firearm in the vehicle. Sharon McCormick told the officer she was on her way, that she did not have a second set of keys, and she would need the officer to get the doors open.

The officer then took additional steps to confirm defendant's identity. She called dispatch to verify whether Kory McCormick was a felon and to request a booking photo. She also requested dispatch send an officer from Oilton (a nearby town) to the mini mart. While Officer Folden was waiting for information from dispatch she had a conversation with defendant, wherein she told him she couldn't leave the car there unattended because there was a firearm in the vehicle. Officer Folden stated defendant replied "who doesn't have guns?" The officer also told defendant that Sharon McCormick was on her way but that she had given the officer permission to unlock the car because she did not have a spare set of keys. After the exchange, defendant walked north away from the mini mart. Officer Folden testified that, at that point, she still did not have confirmation of defendant's felon status from dispatch and so she did not feel comfortable arresting the defendant.

Shortly after that exchange, Officer Folden received confirmation of defendant's prior felony convictions and a booking photo on her cell phone. Officer Florence from Oilton arrived soon after. After an unsuccessful attempt to get into the vehicle, Officer Folden left Officer Florence with the vehicle so she could procure a lock kit from another squad car. About five minutes later they were

4

able to open the car. In the car, the officers found a handgun on the floorboard on the driver's side, which they rendered safe and photographed, and a rifle with the overalls wrapped around it on the passenger side, which they also rendered safe and photographed. Officer Folden also found a large jar of what field-tested positive for marijuana, and a Marvel lunch box containing a white crystal substance, a liquid substance, and some pills.

On cross examination, defense counsel asked the officer about the distance from the pumps to the store, which the officer stated was about two car lengths. He then asked about how defendant was able to open the hood of the car, which the officer could not answer as she did not know. She confirmed that defendant was under the hood during her first encounter with him, and that this was when she saw the firearm wrapped in overalls. She could not see the end of the firearm, but could see the stock and beginning of the barrel where the overalls didn't conceal it. She said she suspected defendant was a felon at that time, but did not know for sure. She also noted that even if he weren't, to leave a vehicle unoccupied with a firearm would be concerning in that area because it's highly populated. She didn't want anybody to break in and take the firearm. Defense counsel asked about the second encounter with defendant–when he returned with his aunt. The officer stated defendant remained at the scene long enough for the officer to talk to LaDonn McCormick, to speak with both Sharon McCormick and dispatch on the phone, and to speak with defendant again. At that time, the officer confirmed that she knew defendant's name, but did not know he was a felon. Defense counsel then asked whether the officer was wearing a body camera during this stop. The officer replied that she was not as they were all in maintenance.

Defense counsel then asked about the narrative reports the officer had filed. The officer testified that the first was created the morning of December 24, 2019, and confirmed that it made no

reference to obtaining consent from Sharon McCormick. Defense counsel then asked whether, in February 2020, the officer submitted an affidavit for a state prosecution of defendant, and whether that affidavit contained any mention of consent. She stated she did submit that affidavit and that it did not mention consent. She confirmed that the first time consent was mentioned in a report was July 2020. On redirect, the officer stated that she did not believe consent was required as she had probable cause without it. On re-cross examination, defense counsel asked when the officer had probable cause. She stated it was when she had confirmation of defendant's felony convictions. Following her testimony, the prosecution rested.

Defense counsel called Sharon McCormick as a witness. She testified that she is defendant's mother. She stated that defendant had permission to use her car. Defense counsel asked about the night of December 24, 2019. She stated that she had received a call from her sister, asking her to come to the mini mart to get her car. She also spoke with the officer on the phone at that time. Defense counsel inquired whether the officer during the call asked permission to unlock the car. Sharon McCormick answered that she did not. Sharon McCormick stated she asked the officer: "If I don't want to drive to my house and get keys, can you get in the car?" When the officer said she could, Sharon McCormick said she would be there in seven minutes. About two minutes later her sister, LaDonn, called Sharon again to let her know she was leaving the scene. Sharon then recalled that by the time she arrived, all the doors of her car were open and there were items on the roof. She asked the officers why they had opened the car.

On cross examination, Sharon McCormick admitted that she was a felon, that she was aware felons were not allowed to possess firearms, and she had been convicted of perjury in 1996. She also stated that when she arrived on the scene, she saw firearms on the top of the vehicle and backed

6

away from them. She stated she did not claim any ownership over the firearms during the exchange with the officers. Defendant had no redirect examination and rested, and prosecution had no rebuttal.

## II.

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." U.S. CONST. amend. IV. "Reasonableness under the Fourth Amendment 'depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" United States v. King, 990 F.2d 1552, 1559 (10th Cir. 1993) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)). "Under the automobile exception to the warrant requirement, police officers may . . . search a car if they have probable cause to believe it contains contraband, regardless of whether a traffic violation has occurred or a search warrant has been obtained." United States v. Benard, 680 F.3d 1206, 1210 (10th Cir. 2012).

"If an officer has lawfully observed an object of incriminating character in plain view in a vehicle, that observation, either alone or in combination with additional facts, has been held sufficient to allow the officer to conduct a probable cause search of the vehicle." United States v. McGehee, 672 F.3d 860, 869 (10th Cir. 2012) (quoting United States v. Sparks, 291 F.3d 683, 690 (10th Cir. 2002) (collecting cases)). To properly seize evidence under the plain view exception to the warrant requirement: (1) the officer must be "lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character [must be] immediately apparent—i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer [must have] a lawful right of access to the object itself.'" Sparks, 291 F.3d at 690 (quoting

United States v. Carey, 172 F.3d 1268, 1272 (10th Cir.1999), and United States v. Soussi, 29 F.3d 565, 570 (10th Cir. 1994)); see also Horton v. California, 496 U.S. 128, 137 (1990).

"'If . . . the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object,' then its incriminating nature is not immediately apparent and 'the plain-view doctrine cannot justify its seizure.'" United States v. Gordon, 741 F.3d 64, 71 (10th Cir. 2014) (quoting Minnesota v. Dickerson, 508 U.S. 366, 375 (1993)). Where an officer has no reason to believe a firearm was incriminating prior to additional investigation, the firearm cannot not be indefinitely seized, even where the firearm was in plain view. Id. The observation of a firearm alone does not give rise to evidence sufficient to warrant the use of the plain view exception. Id.; see also United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (finding plain view exception applied where an officer observed the barrel of a firearm protruding from under the seat of a parked car and there was both a city ordinance and state law prohibiting concealable weapons inside vehicles); United States v. Wilson, 524 F.2d 595, 598 (8th Cir. 1975) (finding seizure of a firearm was proper if the officers had probable cause to believe that the firearm was contraband where it appeared to be an illegally sawed off shotgun). Knowledge that a person is illegally in possession of a firearm satisfies the requirement. See Gordon, 741 F.3d at 73-74.

"The final requirement [of the plain-view exception], that the officer have a lawful right of access to the object, is meant to guard against warrantless entry onto premises whenever contraband is viewed from off the premises in the absence of exigent circumstances, but does not bar the seizure of evidence in a parked car." See Boone v. Spurgess, 385 F.3d 923, 928 (6th Cir.2004) (internal citations omitted). That a car is locked is not an impediment where the automobile exception affords officers the authority to enter the car. See United States v. Galaviz, 645 F.3d 347, 357 (6th Cir.

2011); see also United States v. Perry, 925 F.2d 1077, 1079–80 (8th Cir. 1991) (finding the search of a locked car valid where officer gained access to the vehicle without a key); United States v. Weatherspoon, 82 F.3d 697, 697–99 (6th Cir. 1996) (finding officers entry into and search of a locked car valid after officer observed the barrel of firearm protruding from under the seat).

### III.

Defendant argues that Officer Folden's search of the vehicle was unreasonable because: I) she never asked defendant's permission to open the vehicle and ii) she never sought nor obtained a search warrant to open the vehicle. Dkt. # 17, at 5-6. Plaintiff argues that Officer Folden's search was justified because I) she had probable cause to search the vehicle under the automobile exception to the Fourth Amendment's warrant requirement where she observed a lone man trying to enter his car, identified a firearm in plain view on the passenger seat of the vehicle, and where she learned that the defendant was a felon; and ii) she had consent to search the vehicle from the car's owner. Dkt. # 19, at 2-4.

In this case, the Court finds it is unnecessary to weigh the conflicting testimony of Officer Folden and Sharon McCormick related to the government's secondary argument of owner consent. The Court finds that Officer Folden's actions were appropriate under the automobile exception where Officer Folden, before a search of the vehicle, saw the firearm in plain view, confirmed that defendant had been in sole possession of the car prior to locking himself out, and confirmed that he had felony convictions. The Court finds the testimony of Officer Folden is credible.

First, the officer confirmed that defendant was the only one in possession of the car at the time the keys were locked in the car. The officer described the footage and noted defendant was the

only one using the vehicle. The testimony also established that the officer first observed a firearm on the passenger seat of the vehicle prior to unlocking it and conducting the search. The officer mentioned to both defendant and his mother earlier that evening that she was unwilling to leave a firearm in plain view. So, though she lacked probable cause to enter the car to retrieve the firearm before learning of defendant's prior felony convictions, once she became aware his felony convictions the firearm became contraband in plain view, triggering the exception.

To that end, the officer's testimony is that she took multiple steps to verify the identity of the defendant prior to unlocking the vehicle. First, with the help of dispatch, she identified the registered owner of the vehicle as Sharon McCormick. Then, when defendant returned with his aunt, Officer Folden asked her her nephew's name. LaDonn McCormick stated defendant's name is Kory McCormick. Next, the officer spoke with the owner of the vehicle, Sharon McCormick, on her sister's phone. Sharon McCormick confirmed that her son had permission to use the car and appeared to believe he was there based on her discussion with her sister. At no point did either McCormick sister refute that the defendant was Sharon McCormick's son or that he had been using the car.

Officer Folden took additional steps to confirm with dispatch the identity of the defendant and his felon status. She requested that dispatch send her the defendant's information, including a booking photo. By the time Officer Folden had confirmed that the individual who was attempting entry into the car was Kory McCormick, that he had felony convictions, and that he was the only person who had arrived at the mini mart in the vehicle, she had probable cause to believe the firearm on the passenger's seat was illegal contraband. That she entered the vehicle through means other than a key is immaterial under the automobile exception. As a result, the Court finds and concludes

that all materials seized from the vehicle were lawfully seized pursuant to a lawful search supported by probable cause.

**IT IS THEREFORE ORDERED** that defendant's motion to suppress (Dkt. # 17) is **denied**.

**DATED** this 28th day of September, 2020.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE